RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

ROY CHRISTOPHER WEST,

                    *Petitioner-Appellant*,

    *v.*

UNITED STATES OF AMERICA,

                    *Respondent-Appellee*.

No. 25-1660

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
Nos. 2:06-cr-20185-1; 2:14-cv-14748—Victoria A. Roberts, District Judge.

Argued:  June 3, 2026

Decided and Filed:  August 14, 2026

Before:  SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:**  Craig A. Daly, CRAIG A. DALY, P.C., Royal Oak, Michigan, for Appellant.
Jessica V. Currie, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.
**ON BRIEF:**  Craig A. Daly, CRAIG A. DALY, P.C., Royal Oak, Michigan, for Appellant.
Jessica V. Currie, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

─────────────

## OPINION

─────────────

LARSEN, Circuit Judge.  Roy West was indicted for and convicted of using interstate channels to commission a murder-for-hire.  The maximum sentence for that crime is ten years' imprisonment; but if "death results," the defendant faces a mandatory minimum sentence of life in prison.  West's indictment did not explicitly charge the "death results" enhancement, and the

jury was not instructed on it either. Yet the district court imposed a life sentence. No one noticed the *Apprendi* violation at the time, and West did not raise the issue in his direct appeal or in his 28 U.S.C. § 2255 motion. Now, nearly a decade later, he raises the *Apprendi* issue in a Rule 60(b)(6) motion for relief from his § 2255 judgment. The district court denied the motion because, even were the court to vacate the prior judgment, West's *Apprendi* claim would be barred by the one-year limitations period found in 28 U.S.C § 2255(f) and West has presented no grounds for tolling the statute. West now appeals and we AFFIRM.

I.

In 2006, Roy Christopher West was indicted under 18 U.S.C. § 1958 for commissioning the murder-for-hire of Leonard Day in interstate commerce. In November 2005, Day had stolen $100,000 in cash and $250,000 in jewelry from West while staying with him in Akron, Ohio. So West put a bounty on Day's head, first offering $1,000 and later as much as $50,000. After Marcus Freeman and Christopher Scott agreed to find and kill Day, West supplied them with guns and bullet-proof vests. Six weeks later, on the evening of December 20, Day was shot dead in a residential driveway in Detroit. Cell site location data put Freeman's phone in the vicinity of the shooting at 6:18 p.m. Five minutes later, a 911 dispatcher received a call regarding the shooting. Three minutes after that, Freeman and Scott called West. Freeman sang into the phone: "We get rich, Ohio. We get rich, Ohio. We get rich." He told West that "the situation is over with." West then called his brother, saying: "somebody done murdered that n[***]er." The next morning, cell site location data put Freeman's phone close to West's in Akron. That day, Scott would again call West to ask if he "count[ed] that"—"the count" was "fifty-six twenty." *United States v. West*, 534 F. App'x 280, 282 (6th Cir. 2013). "According to the prosecution, this was a reference to the amount of money exchanged." *Id.*

West was charged under the federal murder-for-hire statute. The indicted offense carried a sentence of "not more than ten years" and required the government to prove that West

> [(1a)] travel[ed] in or cause[d] another (including the intended victim) to travel in interstate or foreign commerce, or
>
> [(1b)] use[d] or cause[d] another (including the intended victim) to use the mail or any facility of interstate or foreign commerce,

[(2)] with intent that a murder be committed in violation of the laws of any State or the United States

[(3)] as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value,

or . . . conspire[d] to do so.

18 U.S.C. § 1958(a). If, additionally, "death result[ed]," the statute provided that West "shall be punished by death or life imprisonment." *Id.* The indictment did not include this "death results" enhancement in its charging language but did allege that "Day was shot to death" and that West paid Freeman "for the murder of . . . Day." *See* R. 1, Indictment, PageID 2, 5.

At trial, the government argued that the evidence had shown that West's co-conspirators, Freeman and Scott, "killed Leonard Day; that they killed him for Roy West and that they did it for money." R. 680, Trial Tr., PageID 8117. West argued that he had not retained Freeman and Scott to "kill Leonard Day" but instead merely to "search and find Leonard Day for the purpose of recovering [his stolen] jewelry." *Id.* at 8137–38. West suggested that "Lenny Day had made so many enemies by December 20th that somebody [else] just took him out." *Id.* at 8162. "[A]nybody could have killed Leonard Day given the way he was living." *Id.* at 8164.

The court instructed the jury that West was "on trial only for the particular crime charged in the [i]ndictment." R. 679, Trial Tr., PageID 8105. The jury could find him guilty of the conspiracy-to-murder charge "even if [he and his co-conspirators] never actually achieve[d] their goal." *Id.* But to enter a conspiracy to commit murder, "Roy West [must have] intended that the victim be killed" and "the intent to kill [had to be] premeditated and . . . deliberate." *Id.* at 8108. The jury was not instructed that Day's death had to result. On the fourth day of deliberation, the jury returned a guilty verdict.

By the time of sentencing, four months later, no one seems to have remembered how the jury was instructed. The probation officer's presentence report calculated West's offense level under the Sentencing Guidelines as forty-three and concluded that life imprisonment was

mandatory.**1**  The court stated that it had read "the information [in the PSR] that describes the offense," and observed that the description "comport[ed] with [the] evidence that was presented at trial."  R. 682, Sentencing Tr., PageID 8190.  The court noted that there were no objections to the PSR and that "everyone is in agreement that . . . the Court is bound to impose a mandatory life sentence on Mr. West."  *Id.*  The court sentenced him accordingly.  This was almost certainly a violation of *Apprendi v. New Jersey*, under which any "factual determination authorizing an increase in the maximum prison sentence for an offense" "must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."  530 U.S. 466, 469, 476 (2000) (citation omitted).**2**

West's counsel failed to raise the issue in his direct appeal.  To be sure, she did raise a claim that touched on West's responsibility for Day's death:  that West should have been able to introduce more evidence that "some third-party outside of the conspiracy may have been guilty of Day's murder."  *West*, 534 F. App'x at 283.  This court disagreed and affirmed his conviction. The panel concluded that the trial court's evidentiary rulings left West with "a large body of evidence and testimony available for his defense to show that persons other than himself likely wanted to kill Day."  *Id.* at 284.  And the "excluded evidence would have added limited value to his claims" regarding another culprit for the murder, "while substantially prejudicing the jury against Day as a victim and a person."  *Id.*

West's conviction became final on December 9, 2013, when the Supreme Court denied his petition of a writ of certiorari.  *See West v. United States*, 571 U.S. 1102 (2013) (mem); *Clay v. United States*, 537 U.S. 522, 527 (2003).  West then filed a pro se motion to vacate, set aside, or correct his sentence on December 8, 2014, one day before § 2255(f)'s one-year period of limitations would have cut off the remedy.  *See generally* 28 U.S.C. § 2255.  He argued, among

---

**1**Under the United States Sentencing Guidelines, an offense-level of forty-three produces a guidelines sentence of life imprisonment.  U.S.S.G. § 5A.  Under § 1958, a finding that "death result[ed]" from the offense makes that sentence mandatory.

**2**Because the government agrees that an *Apprendi* violation is present in the failure to instruct the jury on the element, we need not decide whether the language in the "[m]anner and [m]eans" section of the indictment, R. 1, Indictment, PageID 2, sufficed to "set out all of the elements" and "give notice to the defendant," *United States v. Caldwell*, 176 F.3d 898, 901 (6th Cir. 1999) (citation omitted), *overruled on other grounds by Apprendi*, 530 U.S. 466.

other things, that his trial counsel was ineffective for failing to investigate whether Day had "died due to the length of time it took for the Detroit Paramedics to reach him," rather than "assuming that Day die[d] of his gun shot wounds." R. 804, Motion, PageID 10673. The district court rejected this argument because "Day's cause of death was not an element of this offense." R. 923, Op. & Order, PageID 12302.

On June 17, 2022, seven and a half years after his conviction became final, West brought a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). This filing presented the *Apprendi* issue front and center. And the district court granted relief on that ground. Then this court reversed the district court's grant of compassionate release, concluding that "sentencing errors cannot provide an 'extraordinary and compelling' reason for" such relief. *United States v. West*, 70 F.4th 341, 347 (6th Cir. 2023). To conclude otherwise, we reasoned, would be to permit "an end run around habeas." *Id.* at 346 (citation omitted). The Supreme Court has since come to the same conclusion. *See Fernandez v. United States*, 146 S. Ct. 1292, 1300–04 (2026).

West next filed a Rule 60(b) motion for relief from judgment. The district court agreed with the government that this motion was a second or successive habeas petition in disguise, so it transferred the filing to this court. But this court again reversed and remanded. *See In re West*, 103 F.4th 417 (6th Cir. 2024). The panel concluded that West had raised a genuine Rule 60(b)(6) claim on two grounds: the "sentencing judge's acknowledgement in non-habeas post-conviction proceedings that a prisoner is serving an unconstitutionally imposed life sentence is both so unique and so extraordinary . . . that it supplies a freestanding basis for relief under Rule 60(b)(6)"; and "the Government's conduct in this case raises the specter of fraud on the court, an allegation capable of supplying a separate and independent basis for Rule 60(b)(6) relief." *Id.* at 420. The panel remanded with instructions to "consider" "these claims" as "bona fide Rule 60(b) arguments" for relief from judgment. *Id.*

On remand, the district court considered West's Rule 60(b) motion and his various motions for bond. After multiple rounds of briefing and argument, it rejected them. The court concluded that even if the § 2255 judgment were set aside, any new claim for relief would be barred by § 2255(f)'s one-year period of limitation and none of West's arguments for tolling that

limitation succeeded. But the court granted West a certificate of appealability. West now appeals.

## II.

Rule 60(b) provides that a "court may relieve a party . . . from a final judgment, order, or proceeding" for one of five enumerated reasons. It also provides a sixth category, for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The "party seeking relief under Rule 60(b) bears the burden of establishing the grounds for such relief by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008). A court should grant relief under Rule 60(b)(6)'s catch-all provision "only in 'exceptional or extraordinary circumstances.'" *Miller v. Mays*, 879 F.3d 691, 698 (6th Cir. 2018) (quoting *West v. Carpenter*, 790 F.3d 693, 696–97 (6th Cir. 2015)). And "such circumstances 'rarely occur' in the *habeas* context." *Id.* (quoting *Sheppard v. Robinson*, 807 F.3d 815, 820 (6th Cir. 2015)).

We "review the denial of a Rule 60(b) motion for an abuse of discretion." *Id.*; *accord Buck v. Davis*, 580 U.S. 100, 122–23 (2017). And in "the Rule 60(b)(6) context, this discretion is 'especially broad due to the underlying equitable principles involved.'" *Miller*, 879 F.3d at 698 (quoting *Carpenter*, 790 F.3d at 697).

A prior panel of this court held that West's motion should be considered as a Rule 60(b) motion. *In re West*, 103 F.4th at 420. We do not question that decision here. Although the law-of-the case "doctrine is intended to enforce a district court's adherence to an appellate court's judgment," we apply it "loosely" to our ability to reconsider our own decisions. *Moody v. Mich. Gaming Control Bd.*, 871 F.3d 420, 425–26 (6th Cir. 2017) (citation omitted). That means "we generally will not, for prudential reasons," revisit issues decided by a prior panel. *Id.* Here, the parties have not asked us to revisit the prior panel's holding that West presented a true Rule 60(b) motion, and we see no "exceptional" reason to do so. *Id.* at 426; *see also* Bryan Garner et al., *The Law of Judicial Precedent* 441–42 (1st ed. 2016). But the law-of-the-case doctrine, like *stare decisis*, applies only to issues "actually decided" by a prior opinion, "whether explicitly or by necessary implication." *Moody*, 871 F.3d at 425. It does not apply to dicta or to offhand descriptions of the procedural history below. *Haddad v. Alexander, Zelmanski, Danner &*

*Fioritto, PLLC*, 758 F.3d 777, 781 (6th Cir. 2014) (per curiam). To the extent that the prior panel's description of the procedural history is inconsistent with our own best reading of the record, we are guided by the latter.

## A.

First, West argues that the district court erred in addressing § 2255(f)'s limitations period at all. For one, he contends that this court's prior order required the district court to "consider" his claims on "the merits," and that consideration of the limitations period is inconsistent with that command. Appellant Br. at 8–9 (quoting *In re West*, 103 F.4th at 420). Similarly, he argues that the § 2255(f) limitations period is simply irrelevant to a Rule 60(b) motion for relief from judgment. Neither argument succeeds. The prior opinion of this court held that "[w]hatever the district court, exercising its 'wide discretion,' concludes as to the merits of the claims, they are bona fide Rule 60(b) arguments, not habeas claims in disguise, and should be considered as such." *In re West*, 103 F.4th at 420. "[T]he merits" naturally refers to the merits of West's Rule 60(b) arguments or claims, not the merits of his *Apprendi* claim.

To be sure, the merits of a Rule 60(b) motion include a "range of factors," such as "the risk of injustice to the parties" or the "risk of undermining the public's confidence in the judicial process." *Buck*, 580 U.S. at 123 (citation omitted). Here, that includes what West describes as his "undisputed[ly] unconstitutional life sentence." Appellant Br. at 10 (emphasis removed). But these factors must be "balance[d]" against other concerns of justice and against "the competing polic[y] of the finality of judgments." *Miller*, 879 F.3d at 698 (citation omitted). And it pays to remember that West's Rule 60(b) motion seeks relief from the prior § 2255 judgment, not the criminal judgment itself. *See Gonzalez v. Crosby*, 545 U.S. 524, 528–29, 534 (2005); *accord Buck*, 580 U.S. at 112. If West's motion succeeded, *res judicata* and § 2255(h) would no longer prevent him from bringing his *Apprendi* claim in a new § 2255 motion. But he would have to do just that; a Rule 60(b) motion cannot, of itself, set aside the underlying criminal judgment.

Still, the merit or futility of that hypothetical *Apprendi*-based § 2255 claim is relevant to the resolution of the Rule 60(b) motion. As the district court correctly recognized, if the § 2255

claim would inevitably fail, then reopening the judgment would be nothing more than "an empty exercise." R. 1040, Op. & Order, at 13668 (quoting 12 *Moore's Federal Practice* § 60.24). So, although the would-be § 2255 claim need not be "ironclad," reopening requires, at a minimum, that the claim be "potentially meritorious" and hold some chance of remedying the injury inflicted by the final judgment. *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Loc. No. 59 v. Superline Transp. Co*, 953 F.2d 17, 21 (1st Cir. 1992) (collecting cases).

Procedural barriers to relief count in this analysis. Indeed, the Supreme Court has instructed that "Rule 60(b)(6) relief would be inappropriate" when a procedural obstacle would make the merits of a late-breaking habeas claim "unreviewable" in a reopened § 2255 proceeding. *Buck*, 580 U.S. at 126 (quoting 11 *Wright & Miller* § 2857 for the proposition that "showing 'a good claim or defense' is a precondition [to] Rule 60(b)(6) relief"). A § 2255 claim barred by the statute of limitations is unreviewable, absent some reason for tolling. It follows, then, that the district court did not err in viewing compliance with § 2255(f)'s limitations period as a precondition to Rule 60(b) relief.

West argues that this reading of *Buck* is inconsistent with our decisions in *Miller v. Mays* and *Zagorski v. Mays*. *See Miller*, 879 F.3d at 702, 706; *Zagorski*, 907 F.3d 901, 904–08 (6th Cir. 2018). As he reads those cases, the strength of "the underlying claim is considered 'in the balance of the equities' with respect to the Rule 60(b)(6) motion." Appellant Br. at 10 (citation omitted). We agree that a court may consider the merits of the underlying claim—here West's claim of *Apprendi* error—in its balance of the equities. *See Miller*, 879 F.3d at 702 (questioning whether a court "*must*, as a matter of course, consider the merits of" the underlying claim, but recognizing that it is "appropriate to do so" in some cases (emphasis added)); *Zagorski*, 907 F.3d at 904 (same). But *Buck* teaches that it would be "inappropriate" to balance the equities in favor of granting a Rule 60(b)(6) motion when an insuperable procedural barrier would render the underlying claim "unreviewable" in the reopened § 2255 motion. 580 U.S. at 126–27. So we remain confident in our reading of *Buck*. The district court did not err in understanding § 2255(f) to foreclose any entitlement to Rule 60(b) relief.

Even putting the statute of limitations aside, however, it is not clear that the equities run in West's favor. As previously noted, the only question before the district court was whether to

reopen the judgment to allow West to bring his *Apprendi* claim in a new § 2255 proceeding. But because West didn't raise the *Apprendi* claim in the trial court or on direct appeal, the claim is procedurally defaulted—indeed, doubly so. *See Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000); *see also Regalado v. United States*, 334 F.3d 520, 527–28 (6th Cir. 2003) ("Section 2255 is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process."). So he must show either cause and prejudice excusing each default, *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000), or actual innocence, *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995).

West could not cure the appellate default by claiming ineffective assistance of appellate counsel. *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). To meet that standard he would have to show "a reasonable probability" that he "would have prevailed on appeal had the [*Apprendi*] claim been raised." *Id.* at 700. This record reveals that he could not do so.

An *Apprendi* error is subject to harmless error review. *Washington v. Recuenco*, 548 U.S. 212, 222 (2006); *United States v. Stewart*, 306 F.3d 295, 322–23 (6th Cir. 2002). But West failed to raise the *Apprendi* issue in the trial court, so, on direct appeal, he would have had to show plain error. *See United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003); *Stewart*, 306 F.3d at 313. And on plain error review, West would bear "the burden of proving a deprivation of substantial rights," and of "persuad[ing] the court that the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. McCreary-Redd*, 475 F.3d 718, 723 n.5 (6th Cir. 2007) (citation modified).

Here, the jury concluded that West paid Freeman and Scott to travel in interstate commerce with the intent to kill Leonard Day. Cell site location data put Freeman's phone at the scene of the shooting five minutes before the first 911 call reporting shots fired. Immediately afterwards, Freeman called West to tell him that "the situation is over with" and that he and Scott were now "rich." West then called his brother to report that "somebody done murdered that n[***]er." The jury roundly rejected West's defense that he had hired Freeman and Scott merely to locate Day. The explanation West offered vis-à-vis Day's death, that Day simply "had made so many enemies . . . that somebody [else] just took him out," R. 680, Trial Tr., PageID 8162, did not meaningfully explain or rebut the government's evidence linking Scott and Freeman to

the killing.  Accordingly, even on direct appeal, West could not have shown that "if the District Court had correctly instructed the jury on the [death results] element of [the] offense, there is a 'reasonable probability' that [West] would have been acquitted" on that element.  *Greer v. United States*, 593 U.S. 503, 508 (2021) (citation omitted).  As a result, West could not show ineffective assistance of appellate counsel to establish cause for his procedural default.  *McFarland*, 356 F.3d at 699.  For the same reasons, he also cannot show "actual innocence."  *Schlup*, 513 U.S. at 327.  So Rule 60(b)(6) relief would be "inappropriate."  *Buck*, 580 U.S. at 126.

B.

West alternatively argues that the district court erred in applying § 2255(f).  Subsection 2255(f) imposes a "1-year period of limitation" on any § 2255 motion.  That period "shall run from," as relevant here, "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255(f)(1).  West's judgment became final on December 9, 2013.  So the deadline to file a § 2255 petition was December 9, 2014.  If the district court had reopened the judgment, any new *Apprendi*-based petition would have been at least a decade out of time.

Once the government has invoked § 2255(f)'s limitations period, a movant bears the burden of establishing that some other doctrine tolls application of the statute.  *See, e.g.*, *Millis v. Rewerts*, 181 F.4th 669, 673 (6th Cir. 2026).  As an initial matter, West argues that the government waived the argument.  If it didn't, he argues that the period of limitations, as measured against the compassionate release judgment, did not lapse before he filed his motion; that his claim relates back to his earlier § 2255 motion; that either equitable estoppel, fraud on the court, or fraudulent concealment bars the defense; that equitable tolling applies; or that actual innocence preserves his claim.  None of these arguments succeeds.

*Waiver and forfeiture*.  West first argues that the government did not adequately raise the § 2255(f) statute of limitations as a reason to deny the 60(b) motion.  In both responses to West's Rule 60(b) motion, the government contended that, even if the § 2255 judgment were reopened, "West's *Apprendi* claim would . . . be barred by the statute of limitations in 28 U.S.C. § 2255(f)."  R. 992, Response Br., PageID 13148; *accord* R. 1021, Response Br., PageID 13410.

The court then asked for supplemental briefing on this argument, which West had not "fully addressed." *See* R. 1024, Op. & Order, PageID 13469. West filed a renewed motion for bond in which he addressed the issue. The government responded and West replied. The court had the benefit of lengthy briefing on the issue and held a hearing on the motion.

This is not waiver. Waiver is the intentional "relinquishment or abandonment of a known right." *Walker v. United States*, 134 F.4th 437, 440 (6th Cir. 2025) (citation modified). The government's invocation of § 2255(f) in both response briefs made plain that it had every intention of relying on the defense, even if § 2255(f) was not the government's marquee argument. More than a single sentence might have been helpful, but the district court did not err in concluding that no more was necessary when the application of § 2255(f) depended on no fact beyond the existing record and that application was readily apparent given the procedural posture of the case.

Neither is the claim forfeited. It is true that we have sometimes said that single-sentence invocations of an argument are insufficient to make an argument or to preserve one for appeal. *See, e.g.*, *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *Corridore v. Washington*, 71 F.4th 491, 500 (6th Cir. 2023); *Franklin v. Franklin County*, 115 F.4th 461, 478 (6th Cir. 2024). But there is no doubt that the parties have adequately raised and argued the § 2255(f) issue in this court. West instead argues that the district court erred by treating the issue as adequately presented below. We disagree. The district court reasonably determined that the government's briefing provided it with the information necessary to see that § 2255(f) applied at a first pass. And, in any event, in the absence of an intentional waiver, the district court would have been free to raise the § 2255(f) issue on its own. *See Day v. McDonough*, 547 U.S. 198, 209 (2006). The court heard ample oral argument on the matter after it ordered additional briefing—briefing necessary because West had failed to adequately respond. *Cf. id.* at 210 (noting that a district court "acting on its own initiative . . . must accord the parties fair notice and an opportunity to present their positions"). The district court then ruled on the matter. So the statute of limitations issue is not forfeited. *Cf. United States v. Clariot*, 655 F.3d 550, 556 (6th Cir. 2011) (explaining that even when a party "fail[s] to press [an] argument below," "there

can be no forfeiture where the district court nevertheless addressed the merits of the issue" (citation modified)).

*New judgment.* West next argues that his new § 2255 motion would not be untimely because it would be filed within a year of the district court's compassionate release order. This argument fails for the reasons given by the district court: the compassionate release order did not create a new final judgment and, in any case, the compassionate release decision was reversed.

In general, when "a limited resentencing *benefits* the prisoner," that "sentence modification[]" "do[es] not disturb the underlying initial judgment, which continues to constitute a final judgment." *See Crangle v. Kelly*, 838 F.3d 673, 678 (6th Cir. 2016) (citation modified). But, while "a reduced sentence is not a new one," a "new, worse-than-before sentence . . . amounts to a new judgment." *Id.* (citation modified). Don't just take it from our precedents. The compassionate release statute, 18 U.S.C. § 3582, provides that "[n]otwithstanding the fact that a sentence to imprisonment can subsequently be" "modified pursuant to the provisions of subsection (c)," "a judgment of conviction that includes such a sentence [i.e., 'to imprisonment'] constitutes a final judgment *for all other purposes*." *Id.* § 3582(b) (emphasis added). West tries to distinguish this language by arguing that compassionate release in other cases "merely reduce[s] a sentence," whereas this compassionate release order "found the sentence imposed was unconstitutional and vacated the life sentence." Appellant Br. at 27 n.8. But that's not true. The order "reduce[d] his sentence to time served," "reduce[d] the originally imposed supervised release term from five years to three," and left the "other terms and conditions of West's original sentence . . . unchanged." R. 973, Op. & Order, PageID 12943. The relief granted was a "modifi[cation]" described under § 3582(b).

What's more, the relief ordered was not authorized by § 3582(c)(1). The compassionate release order stepped beyond the bounds of the court's power under § 3582(c) and was reversed accordingly. For this reason, too, West's argument fails. As the district court noted, "the effect of a general and unqualified reversal . . . is to nullify it completely and to leave the case standing as if such judgment . . . had never been rendered." R. 1040, Op. & Order, PageID 13680 (alterations in original) (quoting 5 *C.J.S. Appeal and Error* § 1126 (2024)); *see also Vacate*, *Black's Law Dictionary* (12th ed. 2024) ("To nullify or cancel; make void; invalidate").

The argument fails for yet another reason.  Even if the compassionate release order had been a new "judgment of conviction," it never "bec[a]me[] final" before it was vacated.  28 U.S.C. § 2255(f)(1).  In this context, a judgment of conviction is final when all avenues of direct appeal are exhausted, either because a higher court affirmed the judgment, denied review, or the time to seek review elapsed.  *Clay v. United States*, 537 U.S. 522, 527 (2003).  Vacated well before finality, the judgment was never eligible to serve as a § 2255(f) start date.

*Relation back.*  West next argues that his would-be § 2255 claim would not be barred by the one-year time limit because it would "relate back" to his 2014 motion.  *See* Fed. R. Civ. P. 15(c)(1)(B).  An amendment relates back to an earlier filing when that "amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  *Id.*  That is to say that "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644, 659 (2005).  Conversely, "[a]n amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."  *Id.* at 650.  We "narrowly interpret[] the [Rule 15 standard] in this habeas context."  *Watkins v. Stephenson*, 57 F.4th 576, 581 (6th Cir. 2023).  "[A]ny 'new' facts generally may differ only in specificity (not in kind) from those originally alleged."  *Id.*

Our understanding of what counts as the same facts is colored by the legal claims they were offered to support.  In principle, an amendment can relate back "even though [it] invoke[s] a legal theory not suggested by the original complaint."  *Mayle*, 545 U.S. at 659.  But whether new facts lie in the same "core" as facts alleged in prior claims is viewed with reference to a petitioner's obligation to "'specify all [available] grounds for relief' and to 'state the facts supporting each ground.'"  *Id.* at 661 (alteration in original) (quoting Habeas Corpus Rule 2(c)).

Here, West's original § 2255 petition claimed that his counsel was ineffective for failing to put on evidence showing that West was not responsible for Day's death.  Specifically, he wished his trial counsel had investigated "the manner in which" Day died and "determine[d] whether the physicians who treated . . . Day might have been guilty of gross medical negligence" after Detroit paramedics took their time reaching Day.  R. 804, Original Petition, PageID 10673.

Now, West argues that the same core fact underlies both this claim and the *Apprendi* claim: the cause of Day's death.

We disagree. West's understanding of the core fact underlying the claims "views 'occurrence' at too high a level of generality." *Mayle*, 545 U.S. at 661 (citation omitted). West's prior § 2255 claim centered on his counsel's investigation into the cause of Day's death and whether substandard medical care, rather than the hit-man's bullet, was an intervening cause of his death. It described a pre-trial failure to afford West adequate representation. The *Apprendi* claim, by contrast, focuses on the jury's indictment, the district court's jury instructions, and the sentencing. These are "different 'episodes.'" *Stephenson*, 57 F.4th at 581 (quoting *Watkins v. Deangelo-Kipp*, 854 F.3d 846, 850 (6th Cir. 2017)). Indeed, as the district court rightly noted, the crux of the prior claim was that Day's cause of death mattered, whereas the present claim argues that Day's cause of death does not matter.

West points to the government's response to his original § 2255 petition. In response to West's ineffective assistance claim, the government noted that the cause of Day's death was not an element of the "offense charged." R. 842, Response Br., PageID 11577–78. But the "original pleading" for Rule 15(c) purposes is "the petition in a habeas proceeding," not any response brief or judicial opinion. *Mayle*, 545 U.S. at 655; *see also Stephenson*, 57 F.4th at 580 ("Rule 15 refers to one specific document," "the initial complaint (or petition) in the case in which the amendment occurs."). For all these reasons, West's new *Apprendi* claim does not relate back to his original petition.

*Equitable tolling.* Section 2255(f) is subject to equitable tolling "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011) (citation omitted). A litigant must meet two requirements to merit tolling: "First, the petitioner must establish 'that he has been pursuing his rights diligently.' And second, the petitioner must show 'that some extraordinary circumstance stood in his way and prevented timely filing.'" *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). As elsewhere, we review for an abuse

of discretion, mindful that "[w]hether equitable tolling is warranted is a fact-intensive inquiry best left to the district courts," *Robertson v. Simpson*, 624 F.3d 781, 785 (6th Cir. 2010).[3]

West argues that he has been diligent ever since discovering the *Apprendi* violation in 2022. That may be so. But he does not convincingly argue that he was diligent in the seven and a half years between the expiration of the § 2255(f) filing period and his motion for compassionate release. West was aware of, or had access to, the constituent facts during this time: the elements of the offense, the indictment, the jury instructions, the sentencing materials, and the fact of his life sentence. So West points to the failure of his attorney, and particularly the government, to detect the error earlier. But, as will be explained, the government's failure to notice and raise the issue is not, as West argues, fraud. And an attorney's failure to detect a meritorious objection or issue for appeal, while certainly regrettable, is not an "extraordinary circumstance" preventing timely filing. *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("[A] petitioner's reliance on the unreasonable and incorrect advice of his or her attorney is not a ground for equitable tolling." (citation omitted)). West does not allege that his counsel misled him or refused to file a petition despite a direct request, *Holland*, 560 U.S. at 640–43, "effectively abandoned" him, *id.* at 651 (quoting *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001)), or denied him access to files, *id.* (citing *Spitsyn v. Moore*, 345 F.3d 796, 800–02 (9th Cir. 2003)). The sort of extraordinary circumstances necessary to merit equitable tolling are not present here.

*Equitable estoppel, fraud on the court, and fraudulent concealment*. West argues that any one of these three doctrines prevents the application of § 2255(f). But, as to equitable estoppel and fraud on the court, West cannot show that the government engaged in any knowing misrepresentation. And his fraudulent concealment argument fails because any constructive knowledge imputed to the government is likewise imputed to him.

---

[3]West misunderstands the "rebuttable presumption" language he quotes from *Holland*. *See* 560 U.S. at 645–46 (citation omitted). That language describes a presumption in favor of *the possibility* of equitable tolling of "nonjurisdictional federal statute[s] of limitations." *Id.* It does not describe a presumption in favor of § 2255(f) (or any other limitations rule) being tolled in any particular case. To the contrary, equitable tolling is to be used "sparingly." *Robertson*, 624 F.3d at 784.

Fraud on the court requires "an officer of the court" to make a statement to "the judicial machinery itself" that "is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth." *Carter v. Anderson*, 585 F.3d 1007, 1011 (6th Cir. 2009). And equitable estoppel requires West to have relied on some "misrepresentation by the [government]." *Mich. Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004). That misrepresentation must be "affirmative misconduct," i.e., "an act by the government that either intentionally or recklessly misleads the claimant," "in addition to the other estoppel elements." *Id.* (citation modified).

There is no evidence that the government was aware of the *Apprendi* issue or the risk of an *Apprendi* issue at any time before 2022. Not at sentencing. Not on direct appeal. Not during the prior § 2255 litigation. West's counsel admitted as much at oral argument. *See* Oral Arg. at 10:00–20 ("My personal opinion [is] that it wasn't done intentional[ly]."). West's argument boils down to the assertion that "reckless" means something other than "a conscious (and sometimes deliberate) disregard for or indifference to [a] risk." *Reckless*, *Black's Law Dictionary* (12th ed. 2024). West's citations to Michigan law governing silent fraud on a financial statement, *see Hord v. Env't Rsch. Inst. of Mich.*, 617 N.W.2d 543, 550 (2000), and to the negligence standard in a legal malpractice case, *see Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1460 (7th Cir. 1996), are inapposite. Recklessness is not negligence. An obligation to know or to disclose a fact does not show that one had actual knowledge of it. There is simply no reason to believe that the government acted recklessly or intentionally with respect to the *Apprendi* violation.

As to fraudulent concealment, that doctrine requires a party to have "wrongful[ly] conceal[ed]" its actions and the opposing party to have "fail[ed] . . . to discover the operative facts" despite due diligence. *Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1335 (6th Cir. 1995). Here, too, we look for intentional action. *See Concealment, Black's Law Dictionary* (12th ed. 2024) ("preventing disclosure or refraining from disclos[ure]," or, when prefixed by "fraudulent," "[t]he affirmative suppression or hiding, with the intent to deceive or defraud"). West would have us impute knowledge of the *Apprendi* error to the government. But he cannot avoid the fact that he too would hold this constructive knowledge. *See Ruth v. Unifund CCR*

*Partners*, 604 F.3d 908, 911 (6th Cir. 2010) (explaining that individuals have constructive knowledge when they "have the means of discovery in their power" (citation omitted)). The government cannot constructively conceal what West constructively knows. And neither can West have been duly diligent under these circumstances.

*Actual innocence.* Finally, West rightly notes that a habeas petition alleging a federal constitutional claim can be "considered on the merits," notwithstanding procedural defenses like § 2255(f), "if [the petitioner] makes a proper showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (citation omitted). This "fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* (citation omitted). But "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). And the category of those who can invoke the exception is "severely confined." *McQuiggin*, 569 U.S. at 395. It is only available in "cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted the petitioner."[4] *Id.* (citation modified).

West cannot show that he is factually innocent of causing Day's death. As previously described, the jury determined that West paid Freeman and Scott to travel in interstate commerce with the intent to kill Leonard Day. The evidence linking their activities to Day's death is ample and persuasive: Cell site location data puts Freeman and Scott at the scene of the crime within minutes of the shooting; the two then immediately told West that "the situation is over with"; and West understood all of this to mean that "that n[***]er" had been "murdered." On the facts presented at trial, there is no reasonable probability that the jury would not have concluded that the conspiracy resulted in Day's death.

Nor has West presented new evidence showing that no reasonable juror would have convicted him. West describes the new evidence as "a polygraph report of the government's key witness, Michael Bracey." Appellant Br. at 27. But that document is actually a report on

---

**4**West assumes without discussion that the predicate offense for his actual innocence claim is the enhanced offense he was not charged with. Whether actual innocence refers to innocence of the offense of conviction or of the offense that would justify the sentence given is not a question we need decide.

statements made by Bracey's bunkmate in 2013. The bunkmate reports that Bracey claimed to have lied during the trial of West's co-defendant Scott to secure Scott's conviction. The bunkmate does not claim that Bracey discussed West's case. Nonetheless, West argues that because Bracey was a crucial witness at his trial, and the polygraph report undermines Bracey's credibility, the evidence shows actual innocence. But impeachment evidence rarely shows actual innocence. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998). After all, a reasonable juror faced with both Bracey's testimony and the bunkmate's testimony would not be bound to discredit Bracey's testimony or to return a not-guilty verdict for West.[5] *See Houston v. Tanner*, 160 F.4th 683, 693 (6th Cir. 2025).

West cannot show that he is actually innocent.

* * *

We AFFIRM.

---

[5] For similar reasons, the government would not be barred from calling Bracey on retrial. *Napue v. Illinois* bars the knowing use of false testimony by the government. 360 U.S. 264, 269 (1959). A bunkmate's testimony that Bracey admitted to perjury in another case, almost certainly denied by Bracey himself, does not guarantee that Bracey's testimony in West's case was false. *Cf. United States v. Fields*, 763 F.3d 443, 463 (6th Cir. 2014) (noting that inconsistencies in testimony "do[] not *per se* demonstrate the knowing presentation of false evidence").